Estate of Helen Schwartz, Deceased, Arnold A. Schwartz, Administrator v. Commissioner.
Estate of Helen Schwartz v. Commissioner
Docket No. 9039.
United States Tax Court
1947 Tax Ct. Memo LEXIS 308; 6 T.C.M. (CCH) 139; T.C.M. (RIA) 47034; February 17, 1947
Irving Kunzman, Esq., 9 Watchung Ave., Plainfield, N.J., for the petitioner. Albert H. Monacelli, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent has determined herein a deficiency in estate tax in the amount of $11,534.41. That part of the deficiency *309 is here in issue which results from respondent including in the gross estate of Helen Schwartz, deceased, the sum of $50,204.17, representing the payment made in that amount to decedent's husband pursuant to the terms of an annuity contract in which decedent was named as annuitant and decedent's husband was named as beneficiary. Findings of Fact A stipulation of facts was filed by the parties and we find the facts to be as stipulated. In addition, evidence was adduced at the hearing herein. We set out those facts stipulated which are necessary to an understanding of the issue presented, together with the material facts established by the evidence. The decedent died intestate on February 14, 1942, at the age of 48 after an illness of two weeks' duration, and her husband, Arnold A. Schwartz, was appointed administrator of her estate. In 1931 Arnold A. Schwartz received a considerable sum of money from the sale of his business. He intended to use this money at some indefinite time in the future for the purpose of re-entering business, and in order to have his funds available for this purpose, and at the same time productive of income, he decided to, and did, buy annuity contracts *310 similar to the one here involved. In three of these contracts Arnold A. Schwartz was named as the annuitant. At the suggestion of the representative of the insurance company writing these contracts, he purchased one in which his wife, the decedent, was named as the annuitant and Arnold was named as the beneficiary. At the time it was understood between Arnold and his wife that if Arnold needed the money available under the policy, his wife would obtain it and give it to him. There was absolute trust and confidence between Arnold and decedent. Accordingly, on July 2, 1931, a "Participating Life Income Policy with Principal Sum Payable at Death" was executed and delivered to decedent by The Penn Mutual Life Insurance Co. The application was signed by decedent, but the consideration paid therefor, $52,500, was paid to the insurance company, out of the funds of Arnold by his check dated June 27, 1931. No part of the cost of this policy was paid by the decedent. This contract provided for the payment of $1,500 annually to decedent and the payment to Arnold upon decedent's death of $50,000, this amount being referred to in the policy as "the Principal Sum". Decedent had the right to *311 borrow on the policy an amount not in excess of the "principal sum" and to obtain, at any time upon the surrender of the policy, an amount equal to the "principal sum". Decedent also had the right to assign the policy and to change the beneficiary. No changes were made in the contract after its execution, and decedent exercised no rights granted to her thereby. At the time the contract was purchased decedent was 37 years old, and Arnold was 59 years old. After the death of decedent, Arnold cashed in all of the annuity contracts purchased by him, including the one here involved in which decedent was named annuitant, and used the proceeds in business. Opinion KERN, Judge: In 1931 the decedent's husband purchased an annuity contract in which his wife was named as annuitant and he was named as the beneficiary to whom the principal sum of the annuity was payable upon his wife's death. The decedent had the right, under the contract, to change the beneficiary, to obtain the cash surrender value of the contract, to borrow from the insurance company executing the annuity contract up to the "principal sum" stated therein, and to assign the contract. The decedent died in February 1942 *312 without having exercised any of these rights, and the principal sum plus interest was paid to decedent's husband. The amount thus paid to decedent's husband was included by respondent in decedent's gross estate on the authority of section 811 (a) of the Internal Revenue Code, and sections 81.13, 81.3 and 81.27 (b) of Regulations 105. [1]
*313 In our opinion, the facts present here are equivalent to the following: the husband of a decedent creates a trust from his own property; his wife, the decedent, is the life beneficiary; she has the absolute right to withdraw for her own use the trust corpus and thus terminate the trust; and she has the right, by general power of appointment, to name the beneficiaries to take as remaindermen. In Estate of Gertrude Leon Royce, 46 B.T.A. 1090, we held that such facts did not justify the inclusion of the trust corpus in the wife's gross estate under section 302 (a) of the Revenue Act of 1926, which is in all material respects similar to section. 811 (a) of the Internal Revenue Code. On the authority of that case we hold that respondent erred in his determination that the principal sum called for by the annuity contract was includible in the gross estate of the decedent. We point out that the annuity contract here was purchased by decedent's husband and payment therefor was made by his own funds. The facts thus differ from a situation in which a life insurance policy is purchased from the funds of an insured, or an annuity contract is purchased *314 from funds of the annuitant. There are not the facts present here which would make this case analogous to Estate of Clothide K. Lueders, 6 T.C. 587; rather than governed by Estate of Gertrude Leon Royce, supra. We also point out that the decedent here died prior to October 22, 1942, and thus the amendments to section 811 (f) made by the Revenue Act of 1942 are not applicable. Decision will be entered under Rule 50. Footnotes
1. SEC. 811. GROSS ESTATE The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States - (a) Decedent's Interest - To the extent of the interest therein of the decedent at the time of his death; * * *
SEC. 81.13, Regulations 105. Property of decedent at time of death. - It is designed by the foregoing provisions of the Internal Revenue Code that there shall be included in the gross estate all property of the decedent, whether real or personal, tangible or intangible, the beneficial ownership of which was in the decedent at the time of his death, except real property situated outside the United States. SEC. 81.3. Gross estate. - In addition to the general provisions of subsection (a) of section 311 requiring the inclusion in the gross estate of property (except real property situated outside the United States) to the extent of the interest therein of the decedent; other subsections of section 811 more specifically include in the gross estate for the purpose of the estate tax, as more fully explained hereafter in these regulations, certain transfers made during the decedent's life without an adequate and full consideration in money or money's worth, joint estates with right of survivorship, tenancies by the entirety, community property, life insurance even though payable to beneficiaries other than the estate, property over which the decedent possessed a power of appointment, and dower or curtesy of the surviving spouse or statutory estate in lieu thereof. SEC. 81.27 (b). * * *
Incidents of ownership in the policy include, for example, the right of the insured or his estate to its economic benefits, the power to change the beneficiary, to surrender or cancel the policy, to assign it, to revoke an assignment, to pledge it for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. The insured possesses an incident of ownership if his death is necessary to terminate his interest in the insurance, as, for example, if the proceeds would become payable to his estate, or payable as he might direct, should the beneficiary predecease him.↩